UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| PAUL HARRIS STORES, INC., ) | |
| PAUL HARRIS MERCHANDISING, INC., ) | |
| PAUL HARRIS RETAILING, INC., and ) | |
| PAUL HARRIS DISTRIBUTING, INC., ) | |
| Plaintiffs, ) | |
| ) | |
| vs. ) | 1:02-cv-1014-LJM-VSS |
| ) | |
| PRICEWATERHOUSECOOPERS, LLP, ) | |
| Defendant. ) | |

## ORDER ON DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT ON "STATE TAX PAYMENT" CLAIMS

This matter comes before the Court on Defendant's, PricewaterhouseCoopers, LLP ("PWC"), motion for partial summary judgment on "State Tax Payment" Claims[1] against Plaintiffs, Paul Harris Stores, Inc., Paul Harris Merchandising, Inc., Paul Harris Retailing, Inc., and Paul Harris Distributing, Inc. (collectively "Paul Harris"). Paul Harris alleges that PWC failed to follow-up on or report to Paul Harris "red flags" PWC encountered or should have encountered regarding delinquent State Tax Payments during a fiscal year 1999 audit, constituting negligence and breach of contract under the November 1999 engagement letter between the parties ("Engagement Letter").

For the reasons stated herein, the Court **DENIES** Defendant's Motion for Partial Summary Judgment.

---

[1] The State Tax Payment Claims include state as well as local tax payments.

# I. BACKGROUND

Paul Harris was an Indiana corporation whose stock was publicly traded. Amend. Comp., ¶ 1. From at least 1993 and into 2001, PWC and/or its predecessor Price Waterhouse LLP was engaged as an independent accountant for Paul Harris to audit its consolidated financial statements. In November 1999, Paul Harris agreed to the terms of an engagement of PWC to conduct an audit of Paul Harris' fiscal year 1999 consolidated financial statements. *Id.*, ¶ 39. The Engagement Letter states, in pertinent part:

> The objective of an audit is the expression of an opinion on the financial statements. We will be responsible for performing the audit in accordance with generally accepted auditing standards [("GAAS")]. These standards require that we plan and perform the audit to obtain reasonable assurance about whether the financial statements are free of material misstatement. The audit will include examining, on a test basis, evidence supporting the amounts and disclosures in the financial statements, assessing the accounting principle used and significant estimates made by management, and evaluating the overall financial statement presentation.
>
> * * *
>
> We will design our audit to obtain reasonable, but not absolute, assurance of detecting errors or fraud that would have a material effect on the financial statements as well as other illegal acts having a direct and material effect on financial statement amounts.
>
> * * *
>
> Audits are based on the concept of selective testing of the data underlying the financial statements, which involves judgment regarding the areas to be tested and the nature, timing, extent and results of the tests to be performed. Audits are, therefore , subject to the limitation that material errors or fraud or other illegal acts having a direct and material financial statement impact, if they exist, may not be detected.

Def.'s Exh. 4 at 2.

GAAS provisions, provide, among other things, that:

- "Due professional care is to be exercised in the planning and performance of the audit and in preparation of the report." AU § 230.01

- "This standard requires the independent auditor to plan and perform his or her work with due professional care. Due professional care imposes a responsibility upon each professional within an independent auditor's organization to observe the standards of field work and reporting." AU § 230.02

- "An auditor should possess 'the degree of skill commonly possessed' by other auditors and should exercise it with 'reasonable care and diligence' (that is, with due professional care)." AU § 230.05

- "In applying audit procedures and evaluating the results of those procedures, the auditor may encounter specific information that may raise a question concerning possible illegal acts, such as the following: . . . Failure to file tax returns. . . ." AU § 317.09

- "Sufficient competent evidential matter is to be obtained through inspection, observation, inquiries, and confirmations to afford a reasonable basis for an opinion regarding the financial statements under audit." AU § 326.01

As part of PWC's audit, Paul Harris' bank reconciliation was tested. That report showed 19 outstanding checks to state and local tax authorities dated October 16 or 22, 1999, totaling $49,883.12; 56 outstanding checks to state and local tax authorities dated October 29, 1999, totaling $39, 644.54; and 30 outstanding checks to state and local tax authorities dated November 12-26, 1999, totaling $253,827.99. Lorenz Aff., Exh. 5. These delinquent local and state tax payments were not brought to the attention of Paul Harris. Himmel Aff., ¶ 7.

The outstanding checks were a result of Paul Harris finance department employee Jeff Bourne's ("Bourne") failure to mail certain state tax payments going back to October 1999. Def.'s Ex. 11; Himmel Aff., ¶ 3. Paul Harris had over 300 stores in 29 states, so there were many local and state taxing jurisdictions involved. Himmel Aff., ¶ 3. Bourne had prepared drafts of the state tax

returns and obtained from the accounts payable department checks made payable to the taxing authorities, but he failed to complete the returns or to mail the payments. *Id.*, ¶ 8. Late payment notices were delivered to Bourne. *Id.*, ¶ 3.

Paul Harris did not learn of Bourne's failure to make Paul Harris' state and local tax payments until June 2000, by which time the tax arrearages totaled approximately $1.6-million, some default judgments had been entered against it, and liens were placed on its property. *Id.*, ¶ 8. Paul Harris had to engage Baker & Daniels, its corporate counsel, and hire the Indianapolis office of Arthur Andersen PPL to investigate the full scope of its tax delinquencies, communicate with state and local taxing authorities, and develop and implement a plan for paying the past due taxes. *Id*. Paul Harris paid more than $206,000 for these services. Pl.'s Supp. to Initial Discl. and Amend. Resp. to Interrogatory No. 11.

## II. STANDARD

As stated by the Supreme Court, summary judgment is not a disfavored procedural shortcut, but rather is an integral part of the federal rules as a whole, which are designed to secure the just, speedy, and inexpensive determination of every action. *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986). *See also United Ass'n of Black Landscapers v. City of Milwaukee*, 916 F.2d 1261, 1267-68 (7th Cir. 1990), *cert. denied*, 111 S.Ct. 1317 (1991). Motions for summary judgment are governed by Rule 56(c) of the Federal Rules of Civil Procedure, which provides in relevant part:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Once a party has made a properly-supported motion for summary judgment, the opposing party may not simply rest upon the pleadings but must instead submit evidentiary materials which "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). A genuine issue of material fact exists whenever "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). The nonmoving party bears the burden of demonstrating that such a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986); *Oliver v. Oshkosh Truck Corp.*, 96 F.3d 992, 997 (7th Cir. 1996), *cert. denied*, 520 U.S. 1116 (1997). It is not the duty of the court to scour the record in search of evidence to defeat a motion for summary judgment; rather, the nonmoving party bears the responsibility of identifying the evidence upon which he relies. *See Bombard v. Fort Wayne Newspapers, Inc.*, 92 F.3d 560, 562 (7th Cir. 1996). When the moving party has met the standard of Rule 56, summary judgment is mandatory. *Celotex*, 477 U.S. at 322-23; *Shields Enters., Inc. v. First Chicago Corp.*, 975 F.2d 1290, 1294 (7th Cir. 1992).

In evaluating a motion for summary judgment, a court should draw all reasonable inferences from undisputed facts in favor of the nonmoving party and should view the disputed evidence in the light most favorable to the nonmoving party. *See Estate of Cole v. Fromm*, 94 F.3d 254, 257 (7th Cir. 1996), *cert. denied*, 519 U.S. 1109 (1997). The mere existence of a factual dispute, by itself, is not sufficient to bar summary judgment. Only factual disputes that might affect the outcome of the suit in light of the substantive law will preclude summary judgment. *See Anderson*, 477 U.S. at 248; *JPM Inc. v. John Deere Indus. Equip. Co.*, 94 F.3d 270, 273 (7th Cir. 1996). Irrelevant or unnecessary facts do not deter summary judgment, even when in dispute. *See Clifton v. Schafer*, 969

F.2d 278, 281 (7th Cir. 1992). "If the nonmoving party fails to establish the existence of an element essential to his case, one on which he would bear the burden of proof at trial, summary judgment must be granted to the moving party." *Ortiz v. John O. Butler Co.*, 94 F.3d 1121, 1124 (7th Cir. 1996), *cert. denied*, 519 U.S. 1115 (1997).

### III.  DISCUSSION

#### A.  PAUL HARRIS' MOTION FOR PARTIAL SUMMARY JUDGMENT ON "STATE TAX PAYMENT CLAIMS"

Paul Harris has brought this action against PWC in negligence and breach of contract. *See* Amend. Comp. "Like legal malpractice claims, accountant malpractice claims resemble both a claim arising out of contract for personal services . . . and a claim based on tortious injury to personal property." *First Comm. Bank & Trust v. Kelley, Hardesty, Smith & Co.*, 663 N.E.2d 218, 223 (Ind. Ct. App. 1996). Paul Harris alleges in this action, *inter alia*, that PWC failed to discover that Paul Harris employee Bourne had not made certain local and state tax payments, constituting negligence and a breach of various duties under the engagement letter and GAAS provisions.

##### 1.  PWC's Arguments

###### a.  The Engagement Letter and GAAS Provisions

PWC asserts that under GAAS provisions and the terms of the Engagement Letter, PWC was not obligated to ensure tax compliance, was under "no obligation to investigate Paul Harris' physical mailing of tax checks," and that under the express language of the Engagement Letter and the provisions of GAAS, it was limited to determining whether financial statements were materially

accurate. *See* Def.'s Br. Rep. at 10-12. PWC believes the engagement letter to be dispositive of Paul Harris' State Tax Payment claims because it contractually sets forth the agreed scope and limitations of PWC's work, the respective rules and responsibilities of Paul Harris and PWC, and further, because the Engagement Letter between it and Paul Harris is itself a requirement of GAAS that binds Paul Harris and defines PWC's responsibilities. *Id*. at 9.

To the contrary, the Court notes at the outset that PWC was not obligated only by the specific language in the Engagement Letter. The Engagement Letter provides that PWC had a duty to comply with GAAS provisions. *See* Def.'s Exh. 4 at 2. Regardless of the Engagement Letter's provisions, PWC also was under the duty to do what a reasonably competent auditor would have done under the same or similar circumstances.[2] Therefore, the Court rejects PWC's argument that it is bound only by the limited terms of the Engagement Letter.

### b. The Nature of Paul Harris' Claim

PWC also takes the position that Paul Harris' response involves some "sleight of hand" by changing the very nature of its claim, meriting a grant of summary judgment in PWC's favor. The Amended Complaint alleges that Paul Harris had not paid certain state and local taxes in late 1999 and early 2000, nor had it paid certain state and local taxes related to new stores acquired beginning in March 1999, and PWC did not detect either of these issues during its 1999 year-end audit. Amend. Comp., ¶ 18-20. The Amended Complaint reads: "When [PWC] audited Paul Harris in January and February 2000, PWC *failed to detect* Paul Harris' non-payment of state and local taxes, either related to the [newly acquired] stores or company wide." *Id*., ¶ 20 (emphasis added).

---

[2] GAAS incorporates this tort standard in AU § 230.03. *See* Def.'s Exh. G.

PWC maintains that this is the theory that Paul Harris has pled, and the only theory that it has pursued until this point in the litigation. For example, the Revised Case Management Plan, approved by the Court on January 2, 2004, again stated that :[i]n its audit of Paul Harris in early 2000, PWC *did not detect* this failure to pay state and local taxes." Revised CMP at 3 (emphasis added). Therefore, PWC takes issue with Paul Harris' argument in its response that PWC's "workpapers make clear that during its year-end audit in early 2000, [it] *learned* that many Paul Harris state and local tax payments had not been made. . . ." Pl.'s Br. Resp. at 1 (emphasis added).[3]

True, as PWC notes in its reply brief, "It is well settled that a plaintiff may not amend his complaint through arguments in his brief in opposition to a motion for summary judgment." *Speer v. Rand McNally & Co.*, 123 F.3d 658, 665 (7th Cir. 1997). *See also Grayson v. O'Neill*, 308 F.3d 808, 817 (7th Cir. 2002). However, under liberal requirements of notice pleading, Paul Harris' response falls within the State Tax Payment claims of the Amended Complaint. *Doherty v. City of Chi.*, 75 F.3d 318, 326 (7th Cir. 1996) (Under federal notice pleading requirements, a pleading must only "allow the defendants to understand the gravamen of the plaintiff's complaint.") Paul Harris only asserts that discovery in this case revealed that PWC's failures were more egregious than originally contemplated. "Such simplified 'notice pleading' is made possible by the liberal opportunity for discovery and the other pretrial procedures established by the [Federal] Rules [of

---

[3]  Paul Harris also asserts that "[w]hen [PWC] audited Paul Harris in early 2000, [PWC] *learned* that Paul Harris 'had not made any payments on their 1998 and 1999 [personal] property taxes in Ohio, . . . had not made any payments on state personal property taxes in Ohio and Florida in fiscal 1999, . . . and Paul Harris had not paid *any* state sales tax for the . . . stores Paul Harris had acquired in March 1999 . . . but [PWC] said nothing to Paul Harris management . . . about these delinquencies. . . ." *Id.* at 4 (emphasis in original).

Civil Procedure] to disclose more precisely the basis of both the claim and the defense and to define more narrowly the disputed facts and issues." *Conley v. Gibson*, 355 U.S. 41, 47-48 (1957).

To state that there is evidence indicating that PWC *actually* knew about the delinquencies follows logically from the original allegation that they *should have* known about them. Because Paul Harris has discovered evidence it believes to show that PWC actually knew of the delinquencies does not constitute a fundamental change in its claim. The Amended Complaint fairly put PWC on notice that it was being sued for breach of its duties with respect to the detection and reporting of Paul Harris' failure to make required state and local tax payments. Accordingly, PWC's argument fails.

### c. Negligence Claim – Proximate Cause

PWC also argues that the documents Paul Harris relies on in its response show Paul Harris knew everything it now claims PWC was "negligent" in not reporting to Paul Harris. PWC points out that the control disbursements, state tax accruals, and account reconciliations are Paul Harris documents, and those documents demonstrate that Paul Harris was already aware of all the outstanding checks to taxing authorities that it claims PWC should have told Paul Harris about. Def.'s Br. Rep. at 18-19. Indeed, to prevail on a negligence claim, Paul Harris must prove, among other things, that PWC's alleged negligence proximately caused some cognizable harm to Paul Harris. *See, e.g., Roberson v. Hicks*, 694 N.E.2d 1161-63 (Ind. Ct. App. 1998). However, PWC overlooks the fact that PWC completed its audit in February 2000, and Paul Harris asserts that they were damaged by PWC since penalties and additional expenses were incurred because they did not learn of the failed State Tax Payments until June of 2000. Def.'s Exh. 11 at 2. By June 2000, the tax arrearages totaled approximately $1.6-million, some default judgments had been entered against

Paul Harris, and liens were placed on its property. *Id*., ¶ 8. Therefore, Paul Harris had to engage Baker & Daniels, its corporate counsel, and hire the Indianapolis office of Arthur Andersen PPL to investigate the full scope of its tax delinquencies, communicate with state and local taxing authorities, and develop and implement a plan for paying the past due taxes. *Id*. Paul Harris paid more than $206,000 for these services. Pl.'s Supp. to Initial Discl. and Amend. Resp. to Interrogatory No. 11. Therefore, Paul Harris has appropriately alleged that PWC's action (or inaction) proximately caused cognizable harm.

### 2. Paul Harris Survives Summary Judgment

There exist issues of material fact sufficient to survive summary judgment. The check reconciliation of Paul Harris' account was reviewed, but the large number of outstanding checks to state and local taxing authorities listed on the report – over 100 stale checks totaling more than $340,000 – were not brought to Paul Harris' attention. *See* Lorenz Aff., Exh. 5. The Engagement Letter specifies that PWC would express an opinion on the financial statements about whether it was "free of material misstatement," but this was not its sole responsibility. The Engagement Letter provides further that PWC "will design [the] audit to obtain reasonable, but not absolute, assurance of detecting errors or fraud that would have a material effect on the financial statements as well as other illegal acts having a direct and material effect on financial statement amounts." Def.'s Exh. 4 at 2.

Additionally, PWC was bound to abide by GAAS provisions, which impose various duties of care inappropriate for summary judgment. *See* AU § 230.01-.02 (duty to exercise due professional care); § 317.09 (auditor may encounter information raising a question concerning possible illegal

acts, including the failure to file tax returns); § 326.01 (sufficient evidential matter is to be obtained through "inspection, observation, inquiries, and confirmations to afford a reasonable basis for an opinion").

True, as PWC points out, issues and claims involving the application of written agreements are particularly appropriate for summary judgment, *United States v. 4500 Audek Model No. 5601 AM/FM Clock Radios*, 220 F.3d 539, 542-43 (7th Cir. 2000), but whether a reasonable competent auditor seeing such information would have considered these uncashed state and local tax payments to be a red flag, followed up, and questioned why there were so many, constitutes a question of material fact.

Indeed, PWC may not have been required to ensure that Paul Harris "was in compliance with laws and regulations affecting its business, including tax laws, *see* Def.'s Br. Rep. at 7 (citing Def,'s Exh. 4 at 2), but under the terms of the Engagement Letter and the provisions of GAAS, PWC's failure to account for such a large discrepancy in Paul Harris' account reconciliation becomes a question of reasonableness. The appropriate inquiry remains whether PWC properly investigated the State Tax Payments and if those delinquencies should have been discovered, thus avoiding the additional penalties and costs incurred by Paul Harris. A reasonable jury could find that under the terms of the Engagement Letter and applicable GAAS provisions, PWC neglected its duties and / or breached its contractual duties to Paul Harris. A grant of summary judgment in PWC's favor is therefore inappropriate.

## IV.  CONCLUSION

For the foregoing reasons, the Court **DENIES** Defendant's, PricewaterhouseCoopers, LLP, Motion for Partial Summary Judgment on "State Tax Payment" Claims.

IT IS SO ORDERED this 10th day of January, 2006.

_____
LARRY J. McKINNEY, CHIEF JUDGE
United States District Court
Southern District of Indiana

Distribution attached.

Electronically distributed to:

| | |
|---|---|
| James J. Boland<br>KIRKLAND & ELLIS<br>jboland@kirkland.com | Robert J. Kopecky<br>KIRKLAND & ELLIS<br>rkopecky@kirkland.com |
| Andrea L. Cohen<br>RUBIN & LEVIN, PC<br>acohen@rubin-levin.net | Elliott D. Levin<br>RUBIN & LEVIN, PC<br>edl@rubin-levin.net |
| Anne L. Cowgur<br>MCTURNAN & TURNER<br>acowgur@mtlitigation.com | John F. McCauley<br>MCTURNAN & TURNER<br>jfm@mtlitigation.com |
| Edward Wesley Harris III<br>SOMMER BARNARD ATTORNEYS, PC<br>eharris@sommerbarnard.com | Lee B. McTurnan<br>MCTURNAN & TURNER<br>lmcturnan@mtlitigation.com |
| Carl A. Hayes<br>MCTURNAN & TURNER<br>chayes@mtlitigation.com | Kenneth J. Munson<br>MCTURNAN & TURNER<br>kmunson@mtlitigation.com |
| Elizabeth S. Hess<br>KIRKLAND & ELLIS<br>ehess@kirkland.com | Gayle A. Reindl<br>SOMMER BARNARD ATTORNEYS, PC<br>greindl@sommerbarnard.com |
| Jonathan E. Hinkemeyer<br>KIRKLAND & ELLIS LLP<br>jhinkemeyer@kirkland.com | Jennifer E. Riley<br>RUBIN & LEVIN, PC<br>jennifer@rubin-levin.net |
| John C. Hoard<br>RUBIN & LEVIN, PC<br>johnh@rubin-levin.net | Geoffrey Slaughter<br>SOMMER BARNARD ATTORNEYS, PC<br>gslaughter@sommerbarnard.com |
| John R. Humphrey<br>SOMMER BARNARD ATTORNEYS, PC<br>jhumphrey@sommerbarnard.com | Christopher M.R. Turner<br>KIRKLAND & ELLIS LLP<br>cmturner@kirkland.com |
| Richard A. Kempf<br>SOMMER BARNARD ATTORNEYS, PC<br>rkempf@sommerbarnard.com | |