UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| PAUL HARRIS STORES, INC., ) | |
| PAUL HARRIS MERCHANDISING, INC., ) | |
| PAUL HARRIS RETAILING, INC., and ) | |
| PAUL HARRIS DISTRIBUTING, INC., ) | |
|     Plaintiffs, ) | |
| ) | |
| vs. ) | 1:02-cv-1014-LJM-VSS |
| ) | |
| PRICEWATERHOUSECOOPERS, LLP, ) | |
|     Defendant. ) | |

**ORDER ON DEFENDANT'S MOTION TO STRIKE PLAINTIFFS' JURY DEMAND**

This matter comes before the Court on Defendant's, PricewaterhouseCoopers, LLP ("PWC"), motion to strike Plaintiffs,' Paul Harris Stores, Inc., Paul Harris Merchandising, Inc., Paul Harris Retailing, Inc., and Paul Harris Distributing, Inc. (collectively "Paul Harris"), jury demand. Paul Harris contends that, although it waived a jury trial as to the year-end and quarterly audits under the terms and conditions of a November 1, 2000, engagement letter, it did not waive a jury trial with respect to an August 2000 inventory analysis because the engagement letter waiving a jury trial did not apply to that project.

For the reasons stated herein, the Court **DENIES** Defendant's motion to strike Plaintiffs' jury demand.

**I. BACKGROUND**

Paul Harris was an Indiana corporation whose stock was publicly traded. Amend. Comp., ¶ 1. From at least 1993 and into 2001, PWC and/or its predecessor Price Waterhouse LLP was

engaged as an independent accountant to provide auditing services to Paul Harris. Paul Harris alleges that PWC did not discover problems with Paul Harris' inventory records and that PWC failed to discover that one of Paul Harris' employees did not mail a number of state and local tax checks. *Id.* at 24, 34-35. Based on these allegations, Paul Harris asserts claims against PWC for negligence (Count I) and breach of contract (Count II), and has demanded a jury trial on both claims. *Id.* at 6-8, 10.

PWC's provision of auditing services to Paul Harris that are germane to the instant motion were governed by November 1, 2000, written agreement ("engagement letter" or "letter"). *See* Def.'s Exh. B. By the express terms of the engagement letter, it applied to the year-end audit in early 2001 and quarterly reviews in 2000. *See id.* at 1. Also, the letter specifically addressed the issue of a jury trial in the event of a dispute between the parties, which states, in pertinent part:

> Agreement not to demand jury trial
>
> In the unlikely event that differences concerning our services or fees should arise that are not resolved by mutual agreement, to facilitate judicial resolution and save time and expense of both parties, [Paul Harris] and [PWC] agree not to demand a trial by jury in any action, proceeding or counterclaim arising out of or relating to our services and fees for this engagement.

Def.'s Exh. B at 4. The letter further provided that:

> Any additional services that you may request and we agree to provide will be the subject of separate written agreements.
>
> * * *
>
> This engagement letter reflects the entire agreement between us relating to the services covered by this letter. It replaces and supercedes any previous proposals, correspondence and understandings, whether written or oral.

Def.'s Exh. B at 6-7.

### III. DISCUSSION

A right to jury trial "can be knowingly and intentionally waived by contract." *Bonfield v. Aamco Transmissions, Inc.*, 717 F. Supp. 589, 594 (N.D. Ill. 1989) (striking jury demand). *See also Household Comm. Fin. Servs., Inc. v. Suddarth*, 2002 U.S. Dist. LEXIS 16939, at *27 (N.D. Ill. Sept. 9, 2002) (same). However, according to the Seventh Circuit, "[t]here is a presumption against waiver of the constitutional right to trial by jury." *Winter v. Minn. Mut. Life Ins. Co.*, 199 F.3d 399, 407 n. 11 (7th Cir, 1999). Because the right to a jury trial is important, courts should not "find a waiver without clear, unequivocal evidence that the party intended to waive its right." *Reboy v. Cozzi Iron & Metal, Inc.*, 9 F.3d 1303, 1306 (7th Cir, 1993). *See also Middle Tenn. News Co., Inc. v. Charnel of Cincinnati, Inc.*, 250 F.3d 1077, 1084. "Because of the fundamental nature of a jury trial, every reasonable presumption is indulged against waiver." *Tradewinds Aviation Inc. v. Jet Support Servs., Inc.*, 2004 WL 2533728, at *3 (N.D. Ill. Sept. 28, 2004). *See also Bonfield*, 717 F. Supp. at 594.

PWC argues that Paul Harris knowingly and voluntarily waived a jury trial in the written agreement governing their relationship. Specifically, that the relevant engagement letter contained language expressly and mutually waiving the parties' rights to a jury trial, and the November 1, 2000, letter was agreed to and approved by Paul Harris Officer Richard R. Hettlinger ("Hettlinger"). Def.'s Exh. B at 4, 6.

Paul Harris does not dispute that it waived a jury trial as to the year-end audit or quarterly reviews, but argues that it did not waive a jury trial with respect to the August 2000 inventory analysis because it was the subject of a separate oral agreement and the engagement letter waiving a jury trial does not apply to that project. Paul Harris claims that the November 1, 2000, engagement

3

letter only waived Paul Harris' right to a jury trial "in any action[,] proceeding[,] or counterclaim arising out of or relating to [PWC's] services and fees *for this arrangement*," Def.'s Exh. B at 4 (emphasis added), and because the additional inventory procedures were the product of a separate oral agreement, the jury waiver does not apply to Paul Harris' claims arising from the additional inventory procedures.

Paul Harris proffers evidence that in early July 2000, Hettlinger, recently hired as the company's Chief Financial Officer, became concerned about the reliability of the inventory figures on it's financial records once he learned that the physical inventory of Paul Harris stores in early 2000 had been spread out over many weeks. This led him to believe that the inventory reconciliation on Paul Harris' financial records was inaccurate. Hettlinger Aff., ¶¶ 1, 3. Accordingly, in August 2000, Hettlinger asked Mark Volker, PWC's engagement partner for Paul Harris, to thoroughly analyze Paul Harris' inventory numbers to be sure that the financial records for early 2000 were reliable. *Id.*, ¶ 4.

Further, Paul Harris proffers evidence that Volker orally agreed that PWC would undertake this inventory analysis, which was in addition to PWC's quarterly review covered by the engagement letter. *Id.* Then, in late August 2000, Volker and other PWC personnel orally reported to Hettlinger and others at Paul Harris the results of PWC's inventory analysis. *Id.*, ¶ 6. Several months later, in November 2000, Hettlinger signed the November 1, 2000, engagement letter, which covered PWC's year-end audit of Paul Harris as well as quarterly reviews in May, August, and November 2000. *Id.* ¶ 8; Def.'s Exh. B at 1, 7.

The Court disagrees with PWC's threshold argument that requesting a jury trial is "foreclosed by the unambiguous language of the November 2000 engagement letter." Def.'s Br. Rep. at 2. True,

4

the agreement contained an integration clause specifically stating that its terms replace and supercede any prior understandings or agreements, whether written or oral. Def.'s Exh. B at 7. Also true, the November 1, 2000, engagement letter also says that "[a]ny additional services that you may request and we agree to provide will be the subject of separate written agreements." Def.'s Exh. B at 6. But by the express terms of the November 1, 2000, engagement letter, it applied only to the year-end audit in early 2001 and quarterly reviews in 2000. *See* Def.'s Exh. B at 1. Additionally, at the time the November 1, 2000, engagement letter was signed, PWC had already agreed to do those procedures and had completed its analysis. In fact, PWC also had agreed not to charge Paul Harris for the additional inventory analysis. *See* Hettlinger Aff. ¶ 7. Even if the written agreement was not explicitly limited to the year-end audit and quarterly reviews, the Court fails to see how a written agreement executed in November, 2000, could possibly control a prior agreement in which both parties had completed their relative obligations before the latter's execution.

The Court also rejects PWC's argument that the allegation of a separate oral agreement between Paul Harris and PWC "lacks any evidentiary support and is refuted by the evidence in the record." Def.'s Br. Rep. at 5. To the contrary, Paul Harris has proffered several pieces of evidence supporting their allegation. First, according to an internal PWC memorandum entitled "2nd Quarter 2000 Additional Inventory Procedures":

> Management requested that [PWC] perform additional procedures to test the merchandise inventory balances during the second quarter review as several significant issues were identified related to the perpetual inventory system. Due to management's concern regarding the inventory balances and the perpetual records versus the general ledger, [PWC] performed additional testing . . . .

Pl.'s Exh. 3. Second, one of the PWC auditors admitted that the inventory analysis was additional to and beyond the quarterly review. *See* Hendershot Dep. at 311-12 (indicating, among other things,

5

that additional procedures were performed as a result of discussions with Paul Harris management and that checking Paul Harris' perpetual inventory records for reliability "would not be a part of review procedures."). *Id*. at 276. And third, a spreadsheet showing the hours spent by PWC personnel on the additional inventory procedures reflects that PWC auditors spent 63 hours on "Second Quarter Review" and 302 hours analyzing Paul Harris' inventory. *See* Pl.'s Exh. 6 (plainly stating that these extra hours were "EXCLUSIVE OF 2ND QTR, WHICH IS BILLED SEPARATELY.").

      PWC points to a litany of evidence it believes to refute Paul Harris' position. However, considering Paul Harris' evidence that a separate oral agreement was entered into, PWC's evidence to the contrary is hardly "clear," let alone "unequivocal." *Reboy*, 9 F.3d at 1306; *Charnel*, 250 F.3d at 1084. Paul Harris has supported its allegation for the purposes of this motion – that PWC undertook additional inventory record review that was not the subject of the November 1, 2000, engagement letter. It simply cannot be said that Paul Harris explicitly and unequivocally, waived its right to a jury trial as to its August 2000 inventory analysis claims. Again, "[b]ecause of the fundamental nature of a jury trial, every reasonable presumption is indulged against waiver." *Tradewinds Aviation*, 2004 WL 2533728, at *3. *See also Bonfield*, 717 F. Supp. at 594. Accordingly, the Court shall not grant Defendant's motion to strike Plaintiff's jury demand.

## IV. **CONCLUSION**

For the foregoing reasons, the Court **DENIES** Defendant's, PricewaterhouseCoopers, LLP, motion to strike Plaintiffs,' Paul Harris Stores, Inc., Paul Harris Merchandising, Inc., Paul Harris Retailing, Inc., and Paul Harris Distributing, Inc., jury demand.

IT IS SO ORDERED this 31st day of January, 2006.

_____
LARRY J. McKINNEY, CHIEF JUDGE
United States District Court
Southern District of Indiana

Distribution attached.

Distributed electronically to:

James J. Boland
KIRKLAND & ELLIS
jboland@kirkland.com

Robert J. Kopecky
KIRKLAND & ELLIS
rkopecky@kirkland.com

Andrea L. Cohen
RUBIN & LEVIN, PC
acohen@rubin-levin.net

Elliott D. Levin
RUBIN & LEVIN, PC
edl@rubin-levin.net

Anne L. Cowgur
MCTURNAN & TURNER
acowgur@mtlitigation.com

John F. McCauley
MCTURNAN & TURNER
jfm@mtlitigation.com

Edward Wesley Harris III
SOMMER BARNARD ATTORNEYS, PC
eharris@sommerbarnard.com

Lee B. McTurnan
MCTURNAN & TURNER
lmcturnan@mtlitigation.com

Carl A. Hayes
MCTURNAN & TURNER
chayes@mtlitigation.com

Kenneth J. Munson
MCTURNAN & TURNER
kmunson@mtlitigation.com

Elizabeth S. Hess
KIRKLAND & ELLIS
ehess@kirkland.com

Gayle A. Reindl
SOMMER BARNARD ATTORNEYS, PC
greindl@sommerbarnard.com

Jonathan E. Hinkemeyer
KIRKLAND & ELLIS LLP
jhinkemeyer@kirkland.com

Jennifer E. Riley
RUBIN & LEVIN, PC
jennifer@rubin-levin.net

John C. Hoard
RUBIN & LEVIN, PC
johnh@rubin-levin.net

Geoffrey Slaughter
SOMMER BARNARD ATTORNEYS, PC
gslaughter@sommerbarnard.com

John R. Humphrey
SOMMER BARNARD ATTORNEYS, PC
jhumphrey@sommerbarnard.com

Christopher M.R. Turner
KIRKLAND & ELLIS LLP
cmturner@kirkland.com

Richard A. Kempf
SOMMER BARNARD ATTORNEYS, PC
rkempf@sommerbarnard.com