UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS  DIVISION

| | | |
|---|---|---|
| PAUL HARRIS STORES, INC., | ) | |
| PAUL HARRIS MERCHANDISING, INC., | ) | |
| PAUL HARRIS RETAILING, INC., and | ) | |
| PAUL HARRIS DISTRIBUTING, INC., | ) | |
|      Plaintiffs, | ) | |
| | ) | |
|    vs. | ) | 1:02-cv-1014-LJM-VSS |
| | ) | |
| PRICEWATERHOUSECOOPERS, LLP, | ) | |
|     Defendant. | ) | |

**ORDER ON DEFENDANT'S MOTION TO STRIKE CERTAIN EVIDENCE
SUBMITTED BY PAUL HARRIS ON SUMMARY JUDGMENT**

This matter comes before the Court on Defendant's, PricewaterhouseCoopers, LLP ("PwC"),

Motion to Strike Certain Evidence Submitted by Plaintiffs, Paul Harris Stores, Inc., Paul Harris

Merchandising, Inc., Paul Harris Retailing, Inc., and Paul Harris Distributing, Inc. (collectively "Paul

Harris"), on Summary Judgment.  The items that PwC seeks to strike are as follows: (1) Paragraphs

4, 7, and 8 of the William Stapel ("Stapel") Affidavit (Pl.'s Exh. J); (2) the errata of Rule 30(b)(6)

witnesses Glen Lyon ("Lyon") and Richard Hettlinger ("Hettlinger") (Pl.'s Exhs. R and FFF); (3)

the affidavit and incorporated report of Nancy Ross ("Ross") (Pl.'s Exh. G); (4) paragraphs 7, 8, 9,

and 10 of the Thomas Allison ("Allison") Affidavit (Pl.'s Exh. E); (5) paragraphs 3 through 5 of the

Hettlinger Affidavit (Pl.'s Exh. S); (6) the consent decrees (Pl.'s Exhs. CCC and III); (7) the

reference to Ronald Martin's ("Martin") testimony, at page 11, paragraph 39, of Paul Harris'

response brief; and (8) Paul Harris' reference, at page 33 of its brief to its own interrogatory

response.

In the ongoing battle between the parties and their counsel (now in its fourth year), for the reasons stated herein, the Court **GRANTS in part and DENIES in part** Defendant's motion to strike.

# I. DISCUSSION

## A. THE STAPEL AFFIDAVIT

PwC contends that the Court is precluded by the sham-affidavit rule from considering the Stapel affidavit as it allegedly contradicts prior sworn testimony. *See Cowen v. Prudential Ins. Co. of Am.*, 141 F.3d 751 (7th Cir. 1998). The sham-affidavit rule states that a party may not establish a genuine issue of material fact solely by filing an affidavit that contradicts prior sworn testimony. *See Adelman-Tremblay v. Jewel Cos.*, 859 F.2d 517 (7th Cir. 1988); *see also Bank of Ill. v. Allied Signal Safety Restraint Sys.*, 75 F.3d 1162, 1169 (7th Cir. 1996) (quoting *Van T. Junkins & Assoc's, Inc. v. U.S. Indus., Inc.*, 736 F.2d 656, 657 (11th Cir. 1984) (When a party has given clear answers to unambiguous questions which negate the existence of any genuine issue of material fact, that party cannot thereafter create such an issue with an affidavit that merely contradicts, without explanation, previously given clear testimony)).

True, "courts do not countenance the use of so-called 'sham affidavits,' which contradict prior sworn testimony, to defeat summary judgment." *United States v. Funds in Amount of Thirty Thousand Six Hundred Seventy Dollars*, 403 F.3d 448, 466 (7th Cir. 2005). *See also Cowan v. Prudential Ins. Co. of Am.*, 141 F.3d 751, 756 (7th Cir. 1998). However, the rule is inapplicable here because an inspection of the Stapel affidavit paragraphs 7 and 8, as well as Stapel's deposition testimony, pages 168-69 and 185-90, reveals no contradiction.

2

For example, PwC claims that LaSalle National Bank ("LaSalle") "intended to go forward with a plan to finance Paul Harris after the inventory shortfall." Def.'s Br. Supp. at 5. The deposition testimony cited refers to decisions rendered during a February 1, 2003, meeting, and that pursuant to a February 5, 2001, letter, LaSalle considered PwC to be in default of the loan agreement because of the shortfall, but continued "to work with the borrower and see what plan they had in order to . . . become a viable company." Def.'s Exh. J at 167, 68. Put another way, Stapel's deposition testimony reveals that LaSalle was going to provide Paul Harris with interim financing and allow them to provide budgets upon which LaSalle could base a decision. *Id.*

Stapel's affidavit testimony only provides insight into thoughts or actions that occurred later. Stapel affidavit paragraph seven provides that on February 22, 2001, Stapel questioned whether Paul Harris was double-counting certain inventory and the issue was not immediately resolved. Pl.'s Exh. 5, ¶ 7. It is not contradictory to indicate that the $3.5-million shortfall was discovered and disclosed to the bank, and later to add that it was questioned whether or not inventory was being double counted and, (although known to the bank), this was not confirmed. Therefore, Stapel's affidavit testimony is not inconsistent with his deposition.

The last three bullet points represent PwC's position that Stapel decided that LaSalle should liquidate the entire Paul Harris chain because of an issue regarding double counting of inventory that Stapel first contemplated on February 22, 2001. Def.'s Br. Resp. at 5. Indeed, Stapel's testimony indicates Stapel's thoughts concerning double-counting, and nowhere does it indicate that the issue was resolved. Paragraph seven of the Stapel affidavit states in pertinent part that "[t]he issue of whether there was double-counting was never resolved." Pl.'s Exh. J., ¶ 7. This statement contradicts nothing in Stapel's deposition.

3

Further, paragraph eight of Stapel's affidavit does not contradict his deposition testimony. Stapel testified that "[*t*]*he next day*, [February 23, 2001], when the liquidators at the auction made a sizeable offer to liquidate all Paul Harris stores, I decided to recommend to LaSalle to liquidate the entire chain." Pl.'s Exh. 1, ¶ 8 (emphasis added). It is hardly contradictory to provide testimony that an ultimate decision was reached regarding LaSalle's further financing of Paul Harris at a later date. Stapel's affidavit simply and appropriately answers certain questions that were never put to him in his deposition, or clarifies certain issues that remained unclear at the end of his deposition.

PwC provides no argument regarding affidavit paragraph 4 in its brief in support. Both the Stapel deposition and Stapel affidavit must be considered by the Court in determining if a genuine issue of material fact exists. The Court **DENIES** PwC's motion to strike certain portions of the Stapel affidavit.

## B.  LYON AND HETTLINGER ERRATA SHEETS

PwC argues that the sham-affidavit rule should be applied to the deposition errata sheets submitted by Lyon and Hettlinger, arguing that the errata contradict prior deposition testimony.[1] Although the Court questions the true effect of admitting the errata with respect to the pending motion for summary judgment, the Court **GRANTS** PwC's motion.

Federal Rule of Civil Procedure 30(e) allows "changes in form and substance to a deposition transcript" and thus "permits a party to change a deposition from what he or she said to what he or

---

[1]     Any errata sheets must be submitted to the court reporter withing thirty days following the delivery of the transcript. Fed. R. Civ. P. 30(c).  As PwC does not argue that the errata sheets are untimely, despite being filed as exhibits some three months after the depositions in question, the Court assumes for the purposes of this motion that they were timely filed.

she meant, [al]though the rule requires that the original transcript be retained so that the trier of fact can evaluate the honesty of the alteration." *Thorn v. Sundstrand Aerospace Corp.*, 207 F.3d 383, 389 (7th Cir. 2000). "[A] change of substance which actually contradicts the transcript is impermissible unless it can plausibly be represented as the correction of an error in transcription, such as dropping a 'not.'" *Id.*

It is apparent to the Court that Paul Harris seeks to "undo" the testimony of its 30(b)(6) witnesses by adding errata that in addition to their answers, Paul Harris would be submitting expert testimony regarding the subjects addressed in the questions. While the parties and the Court have acknowledged for some time that Paul Harris would rely on expert testimony for the issues testified upon by Lyon and Hettlinger in their 30(b)(6) depositions,[2] these corrections are really no more than "lawyers' statements," attempting to deflect potentially detrimental testimony. Accordingly, the errata sheets, Plaintiff's Exhs. R and FFF, are impermissible.

There are two errata changes in Hettlinger's 30(b)(6) deposition that go beyond a reference to expert testimony. *See* Hettlinger Dep. at 238, 243. Paul Harris describes this errata as clarification in response to PwC's questions regarding Paul Harris' damages claim in this case. Hettlinger corrects his earlier testimony to PwC's question regarding who incurred the loss Paul Harris is seeking to recover. In his deposition, Hettlinger referred to shareholders of the company incurring the loss rather than a loss to the company itself. The errata states that the loss would be to the company – not the shareholders. Def.'s Exh. 80 at 238, 243. This is an attempt to

---

[2]     Paul Harris has repeatedly informed PwC's counsel and the Court, and the Court has recognized, that it would present expert testimony in support of various issues regarding duty, breach, causation, and damages. *See, e.g.*, Pl.'s June 7, 2005, Resp. at 6, 13; Pl.'s July 7, 2005, Rep. at 8; July 12, 2005, Order ("Paul Harris' 30(b)(6) witness "is free to testify that the Plaintiffs' only evidence regarding a particular topic will be expert testimony.").

impermissibly change the factual testimony offered during Hettlinger's deposition, a tactic which has been rejected by the Federal courts. *See, e.g., Eckert v. Kemper Fin. Servs., Inc.*, 1998 WL 699656 (N.D. Ill. 1998) (listing cases). The Court rejects the deponent's attempt to rewrite material answers given in his deposition. A deposition is not a take home examination. *Greenway v. Int'l Paper Co.*, 144 F.R.D. 322, 325 (W.D. La. 1992).

## C.  ROSS AFFIDAVIT AND ATTACHED EXPERT REPORT

PwC first asserts that because Ross' expert report and the assertions based on that report are fundamentally inconsistent with Paul Harris' prior admissions, Ross' expert report should be stricken. The Court fails to see error in allowing Paul Harris to augment its evidence with expert testimony that goes beyond the information available to Paul Harris 30(b)(6) witnesses such as Stapel and Hettlinger. "[T]estimony given at a Rule 30(b)(6) deposition is evidence which, like any other deposition testimony, can be contradicted and used for impeachment purposes. . . ." *A.I. Credit Corp. v. Legion Ins. Co.*, 265 F.3d 630, 637 (7th Cir. 2001). In and of itself, there is simply nothing wrong with Paul Harris attempting to augment its evidence in this case with expert testimony.

PwC also argues that the report should be stricken because Ross was not properly disclosed as required by the CMP, and Paul Harris did not provide any information developed by Ross in response to discovery requests and orders. Regarding timeliness under the CMP, a review of the docket in this cause reveals that the Ross report was submitted, pursuant to the then-existing CMP, on May 17, 2006, and supplemented pursuant to Federal Rule of Civil Procedure 26(e)(1) on July 20, 2006.

PwC believes that Ross' report should have been served no later than July 15, 2005. However, that date was never triggered because PwC did not make expert disclosures in support of a summary judgment motion by June 1, 2005.  PwC misconstrues the CMP provision about responsive expert reports to conclude that Paul Harris should have provided an expert report in July of 2005, in opposition to a motion for summary judgment that would not be filed until almost a year later.  *See* Dkt. No. 367, April 17, 2006, CMP.

With regard to PwC's argument that Paul Harris did not provide any information developed by Ross in response to discovery requests and orders, the Court disregards that argument, as PwC's brief in support provides no citation to authority.  The Court is under no duty to research and analyze the arguments for litigants.  *See United States v. Amerson*, 185 F.3d 676, 689 (7 Cir. 1999) ("[g]iven our adversarial system of litigation, it is not the role of this court to research and construct the legal arguments open to parties, especially when they are represented by counsel.").

Finally, PwC argues that the report should be stricken because it served an interrogatory asking Paul Harris to address what turned out to be the subject of Ross' report, and, therefore, Paul Harris had a duty under Federal Rule of Civil Procedure 26(e)(2) to supplement its responses once such information became known.  However, Rule 26(e)(2) states that:

> A party is under a duty seasonably to amend a prior response to an interrogatory, request for production, or request for admission if the party learns that the additional response is in some material respect incomplete or incorrect and if the additional or corrective information has not otherwise been made known to the other party during the discovery process or in writing.

Fed. R. Civ. P. 26(e)(2).  Ross' expert report, as the "additional information" described in Rule 26(e)(2), was provided to PwC as soon as it was available.  Therefore, there was no need for Paul

Harris to supplement its discovery responses because the information had "otherwise been made known to the other party during the discovery process or in writing." *Id*.

In the end, none of the reasons PwC proffers supports the conclusion that Ross' affidavit and expert report should be stricken, and the Court **DENIES** PwC's motion.

### D.  ADMISSIBILITY OF ALLISON, ROSS, HETTLINGER, AND STAPEL AFFIDAVITS

PwC asserts that the certain portions of the Allison, Ross, Hettlinger, and Stapel affidavits are inadmissible because they constitute testimony that is not made on personal knowledge, are speculative or conclusory, or constitute opinion testimony that lacks a basis in fact.

### 1.  <u>Paragraphs 7 through 10 of the Allison Affidavit</u>

Allison, a former consultant from Arthur Anderson, opined that Paul Harris "would have" reorganized and that the lenders' interest was "chilled." Allison Aff., ¶ 8. PwC asserts that this and similar statements in paragraphs seven and eight should be stricken as wholly conclusory and speculative. The Court disagrees and **DENIES** PwC's motion. Paragraph two of Allison's affidavit sets forth the breadth and quality of Allison's twenty-five years of experience as a turn around professional, consulting to or advising businesses regarding restructuring and turning around financially-troubled companies – including retail companies. *Id*., ¶ 8. Also attached to the affidavit is Allison's CV. *See id*., Exh. 317. Paragraph two of the affidavit and the attached CV establish that Allison has the necessary experience, education, and training to qualify him to provide an opinion as to whether, under certain circumstances, a troubled company in Paul Harris' position would be

8

able to survive as an ongoing concern, an opinion rendered in paragraph eight of his affidavit. *Id.*,
¶ 8.  Moreover, Allison was intimately involved in Paul Harris' turnaround efforts from June 2000
through February 2001, and his affidavit sets forth specific facts regarding his participation in the
attempt to turn around the Paul Harris business and his principal responsibilities of communicating
and negotiating with potential lenders for Paul Harris.[3]  *Id.*, ¶¶ 3-6.


## 2.  **The Ross Affidavit**

PwC argues that Ross' opinions should be stricken as untimely under the CMP and because
they provide no factual foundation to support her assertions, as required by Federal Rule of Civil
Procedure 26.  As the Court has already reached the conclusion that Ross' affidavit was timely, *see*
section C, the Court shall focus upon only PwC's latter contention.  Ross' affidavit plainly states that
at her direction, her staff performed the analysis upon which her opinion and testimony were based.
PwC has not cited authority for the proposition that an expert cannot rely on an analysis performed
by her staff, at her direction.  The Court finds PwC's foundation argument unavailing.  Again, the
Court is under no duty to research the arguments for litigants, *see Amerson*, 185 F.3d at 689, and
PwC's motion is **DENIED**.

---

[3]      The Court also rejects PwC's assertion that Allison's statement, as expert testimony, must
also be excluded because it violates the CMP.  The CMP deadline for plaintiff's expert
disclosures was May 17, 2006.  Federal Rule of Civil Procedure 26(a)(2)(A) requires disclosure
of "the identity of any person who may be used at trial to present evidence under Rules 702, 703,
or 705 of the Federal Rules of Evidence."  On January 4, 2006, before PwC took Allison's
deposition, Paul Harris disclosed to PwC that Allison "may give testimony at trial pursuant to
Rules of Evidence 702, 703, and 705 relating to Paul Harris's ability to survive as a going
concern if it had known the actual amount and cost of its inventory."  Pl.'s Exh. 9.  There was no
violation of the CMP here.

### 3.  **The Hettlinger Affidavit**

The Court **DENIES** PwC's motion to strike portions of the Hettlinger Affidavit.  The Court does not agree with PwC's assertion that Hettlinger opined as to the subjective views of other individuals.  The Court finds that Hettlinger had personal knowledge of the subjects of his testimony, and his  deposition reveals no admission that he lacked personal knowledge as to whether PwC viewed the inventory testing that it performed to be "in addition to" or part of its quarterly review. PwC Exh. 23 at 177-78.

### 4.  **Stapel's Affidavit Assertions Regarding PwC's Actions**

PwC asserts that Stapel's testimony concerning the work PwC is alleged to have performed with respect to inventory in or around August 2000 is inadmissible and should be stricken because it is not based on personal knowledge.  However, Stapel was merely stating his perception of what had been told to him by Hettlinger for the purpose of explaining his motivation in agreeing with Hettlinger's decision not to do a physical inventory in December of 2000.  While Stapel had no personal knowledge of what PwC did with respect to its inventory analysis in the summer of 2000, he did have a conversation with Hettlinger , in which Hettlinger provided such information to him. The statement is not offered for the truth of the matter asserted – that is, that PwC determined Paul Harris' inventory records were reliable in the summer of 2000.  The statement is simply offered to prove Stapel's motivation for agreeing with Hettlinger's decision not to do a physical inventory in December.  As such, the statement is admissible under Federal Rule of Evidence 803(3) and the Court **DENIES** PwC's motion.

.

### 5. **Paul Harris' "Other Evidence"**

#### a. **SEC Orders / Consent Decrees**

Paul Harris submits and relies upon two consent decrees that PwC or one of its partners entered with the Security Exchange Commission ("SEC"). In the consent decrees, PwC did not admit liability or findings, except jurisdiction. *See* Pl.'s Exhs. CCC, III. Paul Harris seeks to introduce the first order, Pl.'s Exh. III, for the legal proposition that "auditors have their own obligations under the securities laws," and the second order, Pl.'s Exh. CCC, for the fact that the SEC censured PwC, imposing a $1-million penalty, and required it to establish and maintain various policies and procedures. Paul Harris contends that it is not using the consent decrees to prove administrative allegations leveled against PwC, but to prove the fact that the SEC took administrative action.

A consent decree, like any settlement, is inadmissible under Federal Rule of Evidence 408. *See, e.g., Zivitz v. Greenburg*, 1999 WL 1129605, at *4 (N.D. Ill. 1999). With regard to the first consent decree, it is permissible to introduce evidence that consent decrees were entered into, but the purposes articulated by Paul Harris – showing that auditors have obligations under securities laws – cannot be served by introducing such limited evidence. The content of those consent decrees is inadmissible under Rule 408, and it is that content that evidences PwC's, like other auditors', various obligations under securities laws. Introducing the penalties and conditions contained in the second consent decree clearly runs afoul of this rule. The Court **GRANTS** PwC's motion to strike to the extent that Paul Harris seeks to introduce the content or conditions of the consent decrees in question.

11

**b.  Martin's Testimony**

Paul Harris relies, at page 11, paragraph 39 of its brief, on Martin's testimony that Paul Harris relied on PwC's audit work in August 2000.  PwC argues that Martin's testimony establishes that he had no personal knowledge of PwC's work in August 2000.  *See* Def.'s Exh. 37 at 218-21. However, Martin was designated as a Rule 30(b)(6) witness for Paul Harris, allowing him to testify not only from his personal knowledge but also as to matters "known or reasonably available to the organization."  Fed. R. Civ. P. 30(b)(6).  The Court **DENIES** PwC's motion.

**c.  Interrogatory Response No. 18**

Paul Harris relies on Martin's interrogatory response regarding how it priced merchandise, and what would have occurred if it had discovered an inventory shortfall.  Pl.'s Br. at 33; Def.'s Exh. 96 at 17-18.  PwC argues that Martin lacked personal knowledge of the facts in support of the response.  For the same reason Martin did not need personal knowledge to give 30(b)(6) testimony on Paul Harris' behalf, neither is his personal knowledge necessary to provide interrogatory answers on behalf of Paul Harris, and the Court **DENIES** PwC's motion to strike.

## II. <u>CONCLUSION</u>

For the foregoing reasons, the Court **GRANTS in part and DENIES in part** Defendant's,

PricewaterhouseCoopers, LLP, Motion to Strike Certain Evidence Submitted by Paul Harris on

Summary Judgment.  The motion is **GRANTED** with respect to:

- The errata of Rule 30(b)(6) witnesses Lyon and Hettlinger (Pl.'s Exhs. R, FFF);
- SEC consent decrees – to the extent that Paul Harris seeks to introduce the content or conditions of the consent decrees in question (Pl.'s Exhs. CCC, III).

The motion is **DENIED** with respect to:

- Paragraphs 4, 7, and 8 of the Staple Affidavit (Pl.'s Exh. J);
- The affidavit and incorporated report of Ross (Pl.'s Exh. G);
- Paragraphs 7, 8, 9, and 10 of the Allison Affidavit (Pl.'s Exh. E);
- Paragraphs 3 through 5 of the Hettlinger Affidavit (Pl.'s Exh. S);
- The reference to Martin's testimony, at page 11, paragraph 39 of Paul Harris' response brief; and
- Paul Harris' reference, at page 33 of its brief, to its own interrogatory response.

IT IS SO ORDERED this 14th day of September, 2006.


LARRY J. McKINNEY, CHIEF JUDGE
United States District Court
Southern District of Indiana


Distribution attached.

Distributed electronically to:

James J. Boland
KIRKLAND & ELLIS
jboland@kirkland.com

Andrea L. Cohen
RUBIN & LEVIN, PC
acohen@rubin-levin.net

Anne L. Cowgur
MCTURNAN & TURNER
acowgur@mtlitigation.com

Edward Wesley Harris III
SOMMER BARNARD ATTORNEYS, PC
eharris@sommerbarnard.com

Carl A. Hayes
MCTURNAN & TURNER
chayes@mtlitigation.com

Elizabeth Sarah Hess
KIRKLAND & ELLIS
ehess@kirkland.com

Jonathan E. Hinkemeyer
KIRKLAND & ELLIS LLP
jhinkemeyer@kirkland.com

John C. Hoard
RUBIN & LEVIN, PC
johnh@rubin-levin.net

John R. Humphrey
SOMMER BARNARD ATTORNEYS, PC
jhumphrey@sommerbarnard.com

Richard A. Kempf
SOMMER BARNARD ATTORNEYS, PC
rkempf@sommerbarnard.com

Robert J. Kopecky
KIRKLAND & ELLIS
rkopecky@kirkland.com

Elliott D. Levin
RUBIN & LEVIN, PC
edl@rubin-levin.net

John F. McCauley
MCTURNAN & TURNER
jfm@mtlitigation.com

Lee B. McTurnan
MCTURNAN & TURNER
lmcturnan@mtlitigation.com

Kenneth J. Munson
MCTURNAN & TURNER
kmunson@mtlitigation.com

Gayle A. Reindl
SOMMER BARNARD ATTORNEYS, PC
greindl@sommerbarnard.com

Jennifer E. Riley
RUBIN & LEVIN, PC
jennifer@rubin-levin.net

Geoffrey Slaughter
SOMMER BARNARD ATTORNEYS, PC
gslaughter@sommerbarnard.com

Christopher M.R. Turner
KIRKLAND & ELLIS LLP
cmturner@kirkland.com