UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| PAUL HARRIS STORES, INC., ) <br> PAUL HARRIS MERCHANDISING, INC., ) <br> PAUL HARRIS RETAILING, INC., and ) <br> PAUL HARRIS DISTRIBUTING, INC., ) <br>     Plaintiffs, ) <br> ) <br> vs. )   1:02-cv-1014-LJM-VSS <br> ) <br> PRICEWATERHOUSECOOPERS, LLP, ) <br>     Defendant. ) | |

### ORDER ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

This matter comes before the Court on Defendant's, PricewaterhouseCoopers, LLP ("PwC"), motion for summary judgment, pursuant to Federal Rule of Civil Procedure 56 and Local Rule 56.1. For the reasons stated herein, the Court **DENIES** PwC's Motion for Summary Judgment.

### I. BACKGROUND

Paul Harris[1] was a retailer of women's clothing. Def.'s Exh. 1 at 1-2. Glenn Lyon ("Lyon") was hired in March 2000 as President and Chief Merchandising Officer. Lyon Dep. at 16-19, 25, 28-39. Rick Hettlinger ("Hettlinger") was hired in July 2000 as Paul Harris' Chief Financial Officer. During the pertinent time frame, Ronald Martin ("Martin") served as Paul Harris' Controller. From at least 1990, PwC served as Paul Harris' independent accountant, for the purposes of auditing

---

[1] For the purposes of this motion, Plaintiffs, Paul Harris Stores, Inc., Paul Harris Merchandising, Inc., Paul Harris Retailing, Inc., and Paul Harris Distributing, Inc., shall be referred to collectively as "Paul Harris."

financial statements, reviewing quarterly financial statements, and assisting in Securities and Exchange Commission ("SEC") compliance work.

Paul Harris hired Arthur Andersen LLP ("Arthur Andersen") to be its agent in dealing with existing lender and new potential lenders when the company began experiencing financial difficulty. *Id*. at 170; Hettlinger Dep. at 300. Paul Harris' credit facility was with LaSalle National Bank ("LaSalle"). Lyon Dep. at 99-100. Liens on Paul Harris' assets secured LaSalle's loan, and merchandise inventory was a component of the asset base Paul Harris borrowed against. Hettlinger Dep. at 293-95. At the end of January 2001, Paul Harris received the reported results of its year-end physical inventories. Lyon Dep. at 258-59. Based on those initial results, Paul Harris reported to LaSalle that the inventory values on its perpetual records were overstated by approximately $6.1 million. Def.'s Exh. 57.

Within a day of reporting those results, Paul Harris formulated a plan to reorganize the company, closing 100 stores. Def.'s Exh. 58. LaSalle continued to provide funding to the company after it learned of the inventory shortfall. Hettlinger Dep. at 513-14; Stapel Dep. at 166-67; Def.'s Exhs. 61, 105. The notice of default indicated that because the inventory shortfall meant Paul Harris was in default, LaSalle could discontinue any extension of credit at any time, and that any forbearance by LaSalle was on a day-to-day basis. Def.'s Exh. 61.

After agreeing to fund Paul Harris on a day-to-day basis after the inventory issue was discovered, LaSalle met with Paul Harris representatives on February 22, 2001, to discuss the company's plans. Stapel Dep. at 185-86. At that meeting, Stapel raised the question of whether Paul Harris was double-counting inventory on its borrowing base certificates in relation to domestic letters of credit and asked Paul Harris and Arthur Andersen to review and determine if he was

correct. *Id*. at 186-88; Stapel Aff., ¶ 7. On February 23, 2001, LaSalle decided to stop funding Paul Harris and force the liquidation of all the Paul Harris stores. Stapel Dep. at 190.

Paul Harris was required to have its annual financial statements audited by a certified public accountant. *See* 17 C.F.R. § 210.3-01. Beginning in 2000, Paul Harris also was required to have interim reviews of the company's unaudited quarterly financial statements. *See id*. § 240-10-1. PwC was engaged by Paul Harris to perform audits and interim reviews of Paul Harris' fiscal 1999 and 2000 financial statements. Those engagements were memorialized in two engagement letters. Def.'s Exh. 81-82. PwC had independent responsibility for conducting its audits of Paul Harris' financial records in accordance with Generally Accepted Auditing Standards ("GAAS"). *See* 17 C.F.R. §§ 210.1-02(d), 210.3-01; Def.'s Exh. 81 at 2; Def.'s Exh. 82 at 2.

GAAS provide:

> Due professional care is to be exercised in planning and performance of the audit and the preparation of the report.
>
> * * *
>
> An auditor should possess "the degree of skill commonly possessed" by other auditors and should exercise it with "reasonable care and diligence: (that is, with due professional care).

Pl.'s Exh. OO, AU §§ 230.01, 230.05.

## II. STANDARD

As stated by the Supreme Court, summary judgment is not a disfavored procedural shortcut, but rather is an integral part of the federal rules as a whole, which are designed to secure the just, speedy, and inexpensive determination of every action. *Celotex Corp. v. Catrett*, 477 U.S. 317, 327

(1986). *See also United Ass'n of Black Landscapers v. City of Milwaukee*, 916 F.2d 1261, 1267-68 (7th Cir. 1990), *cert. denied*, 111 S.Ct. 1317 (1991). Motions for summary judgment are governed by Rule 56(c) of the Federal Rules of Civil Procedure, which provides in relevant part:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Once a party has made a properly-supported motion for summary judgment, the opposing party may not simply rest upon the pleadings but must instead submit evidentiary materials which "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). A genuine issue of material fact exists whenever "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). The nonmoving party bears the burden of demonstrating that such a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986); *Oliver v. Oshkosh Truck Corp.*, 96 F.3d 992, 997 (7th Cir. 1996), *cert. denied*, 520 U.S. 1116 (1997). It is not the duty of the court to scour the record in search of evidence to defeat a motion for summary judgment; rather, the nonmoving party bears the responsibility of identifying the evidence upon which he relies. *See Bombard v. Fort Wayne Newspapers, Inc.*, 92 F.3d 560, 562 (7th Cir. 1996). When the moving party has met the standard of Rule 56, summary judgment is mandatory. *Celotex*, 477 U.S. at 322-23; *Shields Enters., Inc. v. First Chicago Corp.*, 975 F.2d 1290, 1294 (7th Cir. 1992).

In evaluating a motion for summary judgment, a court should draw all reasonable inferences from undisputed facts in favor of the nonmoving party and should view the disputed evidence in the

light most favorable to the nonmoving party. *See Estate of Cole v. Fromm*, 94 F.3d 254, 257 (7th Cir. 1996), *cert. denied*, 519 U.S. 1109 (1997). The mere existence of a factual dispute, by itself, is not sufficient to bar summary judgment. Only factual disputes that might affect the outcome of the suit in light of the substantive law will preclude summary judgment. *See Anderson*, 477 U.S. at 248; *JPM Inc. v. John Deere Indus. Equip. Co.*, 94 F.3d 270, 273 (7th Cir. 1996). Irrelevant or unnecessary facts do not deter summary judgment, even when in dispute. *See Clifton v. Schafer*, 969 F.2d 278, 281 (7th Cir. 1992). "If the nonmoving party fails to establish the existence of an element essential to his case, one on which he would bear the burden of proof at trial, summary judgment must be granted to the moving party." *Ortiz v. John O. Butler Co.*, 94 F.3d 1121, 1124 (7th Cir. 1996), *cert. denied*, 519 U.S. 1115 (1997).

### III. DISCUSSION

At the outset, the Court notes that the vast majority of PwC's arguments are based on the premise that evidence discussed in the Court's Order on Defendant's Motion to Strike Certain Evidence Submitted by Paul Harris on Summary Judgment ("Strike Order"), is inadmissible.[2] However, the Court denied PwC's motion to strike with few exceptions,[3] finding the vast majority

---

[2] *See* Def.'s Rep. Br. at 16 ("PwC's motion is based on undisputed material facts from the record establishing that (1) Paul Harris produced no evidence that its inventory was actually materially misstated, (2) no alleged conduct by PwC proximately caused Paul Harris' claimed injury, (3) whether Paul Harris ever would have successfully reorganized and continued in business is pure speculation, and (4) because Paul Harris' claimed 'injury' in this case is premised on its own failed reorganization efforts after filing for bankruptcy, which were the sole responsibility of Paul Harris, no reasonable fact-finder could ever find that Paul Harris is less than 50% responsible for that alleged injury.").

[3] The Court struck only Paul Harris' proffered SEC orders and consent decrees as inadmissible under Federal Rule of Civil Procedure 408, and the Heitlinger and Stapel affidavit

of the evidence submitted by Paul Harris to be admissible and relevant to the pending motion for summary judgment.  *See* Dkt. No. 451 at 13 (summarizing the Court's ruling).[4]

## A.  THE NATURE OF PAUL HARRIS' CLAIMS

Paul Harris' Complaint sounds in both negligence and breach of contract, and Indiana law acknowledges that a client may sue an auditor under both theories.  *See First Cmty. Bank & Trust v. Kelley, Hardesty, Smith & Co.*, 633 N.E.2d 218, 233 (Ind. Ct. App. 1996) ("Like legal malpractice claims, accountant malpractice claims resemble both a claim arising out of contract for personal services . . . and a claim based on tortious injury to personal property.").[5]  Paul Harris' breach of

---

errata sheets for impermissibly altering the factual testimony offered during their respective depositions.  *See id*.

[4]      On September 27, 2006, PwC filed a Motion to Reconsider September 14, Order on PwC's Motion to Strike Certain Evidence Submitted by Paul Harris on Summary Judgment.  PwC presented argument regarding the affidavits of Nancy A. Ross ("Ross"), Thomas J. Allison ("Allison"), and Martin's 30(b)(6) testimony and interrogatory responses.

A motion to reconsider is proper only when "the Court has patently misunderstood a party, or has made a decision outside the adversarial issues presented to the Court by the parties, or has made an error not of reasoning but of apprehension." *Bank of Waunakee v. Rochester Cheese Sales, Inc*., 906 F.2d 1185, 1191 (7th Cir. 1990).  Accordingly, "motions to reconsider are not appropriate vehicles to advance arguments already rejected by the Court or new legal theories not argued before the ruling." *Zurich Capital Markets Inc. v. Coglianese*, 383 F. Supp. 2d 1041, 1045 (N.D. Ill. 2005) (internal citation omitted).  The Court **DENIES** PwC's motion for reconsideration, which rehashes arguments presented in PwC's original motion and reply, without asserting that the Court patently misunderstood the parties or made an error of apprehension.

[5]      PwC cites *INS Investigations Bureau, Inc. v. Lee*, 784 N.E.2d 566 (Ind. Ct. App. 2003), for the proposition that a plaintiff under similar circumstances may not assert both contract and negligence claims.  *Id*. at 577.  However, the *Lee* court held that a plaintiff is permitted to plead alternative or inconsistent theories, and is merely prohibited from recovering twice for the same wrong.  *Id*.

contract claim alleges that PwC was to audit Paul Harris' financial statements in accordance with GAAS and PwC breached that contract by misinforming Paul Harris that the inventory valuations were reliable. Amend. Comp., ¶¶ 39, 42. Similarly, Paul Harris' negligence claim alleges that in undertaking accounting services for Paul Harris, PwC assumed a duty to exercise reasonable diligence, care, and skill that an ordinarily prudent certified public accountant would have exercised under the same or similar circumstances. *Id*., ¶ 33.

Although Paul Harris could raise a claim either in tort or contract, the essence of the claim is not that PwC breached any particular provision of the contract. Instead, Paul Harris argues that PwC and its employees had a duty to complete the investigation in the manner required of other accountants. Both the contract and negligence counts allege a breach of the same duty and rely on the same injury.

As alleged here, an accountant's failure to perform an audit in accordance with the professional standard of care gives rise to a claim for negligence, not breach of contract. *See Red Rose Motors, Inc. v. Boyer & Ritter*, 66 Pa. D. & C.4th 73, 81 (2004). That is because the failure to perform accounting or auditing work properly is premised on compliance with GAAS and an accountant's duty to act in compliance with GAAS arises by law, not by contract. *See Battenfeld of Am. Holding Co., Inc. v. Baird, Kurtz & Dobson*, 60 F. Supp. 2d 1189, 1205 (D. Kan. 1999) (rejecting plaintiff's claim that engagement letters expressly providing to conduct audits in accordance with GAAS imposed a contractual duty separate and apart from any duty imposed by law); *Smith v. AVSC Intern., Inc.*, 148 F. Supp. 2d 302, 316 n.8 (S.D.N.Y. 2001) (citing *Official Comm. of Unsecured Creditors of Correll Steel v. Fishbein & Co*., 1992 WL 196768, at *6 (E.D. Pa. 1992) (contract is not the source of an accountant's duty to act with professional care)).

At the outset, and before addressing the parties' specific arguments, the Court notes that "[b]ecause issues of reasonable care, causation, and comparative fault are more appropriately left for determination by the trier of fact, summary judgment is rarely appropriate in negligence cases." *Daisy v. Roach*, 811 N.E.2d 862, 864 (Ind. Ct. App.2004). Before the Court is just such a case.

### B. PAUL HARRIS' EVIDENCE THAT ITS INVENTORY WAS MISSTATED AT EITHER YEAR-END 1999 OR AUGUST 2000.

PwC asserts that Paul Harris' binding interrogatory responses and Rule 30(b)(6) testimony establish that Paul Harris failed to prove that its inventory was misstated. More specifically, Paul Harris' interrogatory response stated that the company did not know what the true inventory values were at those dates, and its two designated Rule 30(b)(6), Hettlinger and Lyon, admitted that Paul Harris did not know what those true inventory values were. Hegglinger Dep. at 104-13; Lyon Dep. at 47. However, as discussed in the Court's Strike Order, Paul Harris has submitted the affidavit and report of Ross, Paul Harris' expert Certified Professional Accountant. Ross determined that Paul Harris' inventory was overstated by $4.5 million at fiscal year-end 1999 and by $3 million at the end of the second quarter 2000. Both the Ross affidavit and her supporting expert report are admissible for the purposes of the instant motion and create a genuine issue of material fact as to the misstatements at year-end 1999 and/or August 2000. This testimony is sufficient to create a genuine issue of material fact as to the issue.

8

### C. PAUL HARRIS' EVIDENCE THAT PWC PROXIMATELY CAUSED PAUL HARRIS' ALLEGED INJURY

PwC asserts that, as a matter of law, no jury could find proximate causation because Paul Harris cannot contradict the evidence that the inventory shortfall was not the reason LaSalle stopped funding Paul Harris. Specifically, Paul Harris' "failed reorganization" claim depends on Paul Harris' contention that it was the January 2001 discovery of the purported inventory shortfall that prompted LaSalle to stop funding Paul Harris and that forced the company to liquidate. PwC points to the fact that Lyon and Stapel both testified that Paul Harris and LaSalle agreed on a "go forward" plan after the shortfall was discovered. Under Indiana law, "[a]n act or omission is a proximate cause of an [injury] if the [injury] is a natural and probable consequence of the act or omission." *Hawkins v. Cannon*, 826 N.E.2d 658, 662 )Ind. Ct. App. 2005) (quoting Indiana Pattern Jury Instructions (Civil) § 5.06 (2d 2003) (alterations by the court)).

Drawing all inferences in favor of and viewing the facts in a light most favorable to the nonmovant, Paul Harris has submitted evidence from which a reasonable jury could find that the inventory shortfall discovered in January 2001 was the reason LaSalle decided to liquidate Paul Harris. Paul Harris presents evidence as follows:

Days after Paul Harris informed LaSalle of the shortfall, LaSalle issued a notice of default that made clear that any forbearance by LaSalle was on a day-to-day basis. Pl.'s Exh. J, ¶ 5. The default notice also indicated that LaSalle could discontinue any extension of credit at any time. *Id*. Once Paul Harris learned of the inventory shortfall, it and the Arthur Andersen turn around team put together a plan to try to save Paul Harris by closing an additional 100 stores and downsizing to a 166 store chain. Pl.'s Exh. DDD; Allison Dep. at 257-58, Pl.'s Exh. F. Although Paul Harris continued

to meet with LaSalle during February 2001, the parties never reached agreement on LaSalle funding the downsized Paul Harris. Pl.'s Exh. M, ¶ 2. An auction was scheduled for February 23, 2001, for liquidators to bid on the 100 stores that would be closed. By February 21, 2001, Stapel, the LaSalle officer in charge of the Paul Harris account, had decided to ask the liquidators to bid on the entire chain – all 266 stores. Stapel Aff., ¶ 6. The next day, while meeting with Paul Harris personnel, Stapel raised a question about possible double-counting of inventory on Paul Harris's borrowing base certificates in relation to domestic letters of credit. Stapel Dep. at 186-88, Def.'s Exh. 5; Stapel Aff.,¶ 7. Thus, Stapel had decided to get a bid to liquidate all Paul Harris stores before he even became aware of possible double-counting.

While PwC contends it was the double-counting, not the inventory shortfall, that caused LaSalle to force the liquidation of all Paul Harris stores, a jury could find otherwise and a genuine issues of material fact exist as to proximate cause.[6]

---

[6] Various courts have held that proximate cause is established by evidence that a client made business decisions in reliance on financial statements that were negligently audited. *See, e.g., World Radio Labs. v. Coopers & Lybrand*, 557 N.W.2d 1, 12 (Neb. 1996); *Stroud v. Arthur Andersen & Co.*, 37 P.3d 783, 792 (Okla. 2001) (causation established where client "made several business decisions to its detriment in reliance on the flawed financial statements of its worth"); *Salisbury v. Arthur Andersen & Co.*, 956 S.W2d 601, 602-03 (Tex. Ct. App. 1997) (auditor failed to find and advise client of inventory overstatement, causing company's demise because management made business decisions in reliance on financial statements). Paul Harris has presented evidence that after PwC audited Paul Harris' inventory numbers, Lyon and Hettlinger managed the company in reliance on those numbers. Def.'s Exh. 75 at 82.

Furthermore, as pointed out by Paul Harris, several courts have held that where an auditor failed to advise a client of its true financial condition, thereby preventing management from acting to correct the problems, proximate cause is a question for the jury. *See, e.g., Comeau v. Rupp*, 810 F.Supp. 1172, 1179 (D. Kan. 1992) ("Comeau II"); *Seafirst Corp. v. Jenkins*, 644 F.Supp. 1152, 1155 (W.D. Wash. 1986). Here, a reasonable jury could conclude that had PwC told Paul Harris in March 2000 or even August 2000 that its inventory records were unreliable, Paul Harris would have taken steps to correct the problem. See Def.'s Exh. 30 at 174-77.

## D.  PAUL HARRIS' EVIDENCE THAT ITS INJURIES WERE FORESEEABLE

PwC asserts that Paul Harris' attenuated series of events demonstrate that Paul Harris' liquidation actually arose from a series of unforeseeable circumstances and events, including decisions by third-party lenders and others.  "Whether proximate cause exists is a question of foreseeability." *INS Investigations Bureau v. Lee*, 784 N.E.2d 566, 579 (Ind. Ct. App. 2003).  However, liability "does not depend on whether the defendant could have predicted injury would happen to the plaintiff in exactly the way it did . . . . [I]f the actor should have realized his conduct might cause some harm to another in substantially the manner in which it is brought about, the harm is universally regarded as the legal consequence of the actor's negligence." *Harper v. Guarantee Auto Stores*, 533 N.E.2d 1258, 1264 (Ind. Ct. App. 1989).

The Court finds that a genuine issue of material fact exists as to this issue as well.  Paul Harris has presented evidence that PwC was aware of Paul Harris' terms with LaSalle regarding their credit agreements and knew that inventory was the principal collateral under the credit agreement. Pl.'s Exh. EEE at PWC1174-75, PWC1179, PWC3450-51, PWC3840-41, PWC3597-98, PWC3842. The Court cannot conclude as a matter of law that it was not foreseeable to PwC that a massive shortfall in collateral would create a default that a lender would not be willing to waive.  As in this case, "issues of proximate causation and foreseeability . . . are almost always jury issues." *Tober v. Graco Children's Prods., Inc.*, 2004 WL 1987239, at *8 (S.D. Ind. July 28, 2004).  *See also Orban v. Krull*, 805 N.E.2d 450, 454-55 (Ind. Ct. App. 2004).

### E. PAUL HARRIS' EVIDENCE THAT IT WOULD HAVE SUCCESSFULLY REORGANIZED

PwC asserts that Paul Harris has offered no admissible evidence to support its claim that Paul Harris would have successfully reorganized if it had been informed of an inventory shortfall in August 2000 or earlier. However, as indicated in the Court's Strike Order, Paul Harris submitted expert opinions of Allison and Ross that Paul Harris would have been able to obtain financing and successfully reorganized had it discovered the inventory shortfall earlier. *See* Pl.'s Exh. E; Allison Aff., ¶ 8. As noted in the Strike Order, that evidence is admissible for the purposes of the instant motion. There exists a genuine question of material fact on this issue which the jury must resolve.

### F. PAUL HARRIS' EVIDENCE REGARDING WHO WAS ALLEGEDLY DAMAGED

PwC asserts that even if Paul Harris had reorganized, there is no evidence that its shareholders would not have suffered the exact same loss of "going concern." This argument is rehashing issues of proximate cause and foreseeability already discussed by the Court.

PwC also asserts that Paul Harris is not seeking lost profits or some other tangible harm to the company, but, rather, is seeking to recover the loss of the enterprise value in the marketplace for the stockholder. However, any harm sustained by Paul Harris' shareholders is derivative of the loss sustained by the corporate entity. *See Weissman v. Weener*, 12 F.3d 84, 87 (7th Cir. 1993). Thus, whether Paul Harris' shareholders suffered an injury as the result of PwC's alleged malpractice is irrelevant.

### G.  COMPARATIVE FAULT

The Comparative Fault Act "governs any action based on fault that is brought to recover damages for injury or death to a person or harm to property. . . ." Ind. Code § 34-51-2-1. Under the statute, a claimant "is barred from recovery if the claimant's contributory fault is greater than the fault of all persons whose fault proximately contributed to the claimant's damages." *Id*. § 34-51-2-6(a).

PwC asserts that the evidence in the record, along with federal law and professional standards, establishes that no reasonable fact-finder could find Paul Harris was less than fifty percent responsible for any alleged damages.  However, to reach such a conclusion would require the Court to ignore the standard to be applied in the instant summary judgment motion – namely that the facts be viewed in the light most favorable to and all inferences be drawn in favor of the non-movant. Again, "issues of reasonable care, causation, and comparative fault are more appropriately left for determination by the trier of fact. . . ."  *Roach*, 811 N.E.2d at 864.

PwC also points to the fact that Paul Harris has admitted responsibility to maintain accurate records under federal law, and as Paul Harris has admitted such responsibility, no jury could find PwC more than 50% responsible for Paul Harris' failure.  *See* Def.'s Br. Rep. at 34 (citing 15 U.S.C. § 78m(b)(2); *SEC v. World-Wide Coin Investments, Ltd*., 567 F. Supp. 724 (N.D. Ga. 1983).

In the context of the instant motion for summary judgment, the Court cannot conclude that PwC is immune from liability because Paul Harris may have been non-compliant with regard to securities laws.  A purported violation of securities laws by Paul Harris would not shelter PwC from liability merely because Paul Harris was a public company under the SEC's jurisdiction.  Carried to its conclusion, PwC's argument is that a publicly-traded company could never sue its auditor for

malpractice because of material errors in its financial statements the auditor failed to detect, because the resulting inaccuracies render the company noncompliant with SEC regulations.

### The Audit Interference Rule

Paul Harris asserts that despite the fact that no Indiana court has adopted it, the "audit interference rule" limits a client's contributory negligence or comparative fault to instances where the client's conduct interfered with the auditor's ability to perform its audit. *See National Surety Corp v. Lybrand*, 9 N.Y.S.2d 554 (N.Y. App. Div. 1939); *Lincoln Grain, Inc. v. Coopers & Lybrand*, 345 N.W.2d 300, 306-07 (Neb. 1984); *Bd. of Trs. of Cmty. Coll. Dist. No. 508 v. Coopers & Lybrand*, 803 N.E.2d 460, 468 (Ill. 2003) (citation omitted); *Fullmer v. Wohlfeiler & Beck*, 905 F.2d 1394, 1398-99 (10th Cir. 1990) ("the accountant should not be absolved of the duty undertaken by him to one reasonably relying on his audit unless the plaintiff's negligence contributed to the auditor's misstatement in his reports.").

However, the rationale underlying the audit interference rule simply is not present in this case. In the few states where the rule was adopted, it was adopted to ameliorate what were at the time considered by some courts to be the "harsh" results of contributory negligence, which would bar the claims of an audit client even if it bore only a small portion of the responsibility for its injury. The Seventh Circuit has held that Indiana courts would not apply such a common law exception in light of the Comparative Fault Act. *Roggow v. Mineral Processing Corp.*, 698 F. Supp. 1441, 1445 (S.D. Ind. 1988), *aff'd*, 894 F.2d 246 (7th Cir. 1990) ("this Court concludes that, if given the opportunity, the Indiana Supreme Court would hold that any of the ameliorative common law

doctrines designed to lessen the harsh results of contributory negligence no longer are applicable under the statutory scheme of the Indiana Comparative Fault Act.").

### IV. CONCLUSION

For the foregoing reasons, the Court **DENIES** Defendant's, PricewaterhouseCoopers, LLP, Motion for Summary Judgment and **DENIES** Defendant's Motion to Reconsider the Court's September 14, 2006, Order on PwC's Motion to Strike Certain Evidence Submitted by Paul Harris on Summary Judgment.

IT IS SO ORDERED this 4th day of October, 2006.

LARRY J. McKINNEY, CHIEF JUDGE
United States District Court
Southern District of Indiana

Distribution attached.

15

Distributed to:

| | |
|---|---|
| James J. Boland<br>KIRKLAND & ELLIS<br>jboland@kirkland.com | Robert J. Kopecky<br>KIRKLAND & ELLIS<br>rkopecky@kirkland.com |
| Andrea L. Cohen<br>RUBIN & LEVIN, PC<br>acohen@rubin-levin.net | Elliott D. Levin<br>RUBIN & LEVIN, PC<br>edl@rubin-levin.net |
| Anne L. Cowgur<br>MCTURNAN & TURNER<br>acowgur@mtlitigation.com | John F. McCauley<br>MCTURNAN & TURNER<br>jfm@mtlitigation.com |
| Edward Wesley Harris III<br>SOMMER BARNARD ATTORNEYS, PC<br>eharris@sommerbarnard.com | Lee B. McTurnan<br>MCTURNAN & TURNER<br>lmcturnan@mtlitigation.com |
| Carl A. Hayes<br>MCTURNAN & TURNER<br>chayes@mtlitigation.com | Kenneth J. Munson<br>MCTURNAN & TURNER<br>kmunson@mtlitigation.com |
| Elizabeth Sarah Hess<br>KIRKLAND & ELLIS<br>ehess@kirkland.com | Gayle A. Reindl<br>SOMMER BARNARD ATTORNEYS, PC<br>greindl@sommerbarnard.com |
| Jonathan E. Hinkemeyer<br>KIRKLAND & ELLIS LLP<br>jhinkemeyer@kirkland.com | Jennifer E. Riley<br>RUBIN & LEVIN, PC<br>jennifer@rubin-levin.net |
| John C. Hoard<br>RUBIN & LEVIN, PC<br>johnh@rubin-levin.net | Geoffrey Slaughter<br>SOMMER BARNARD ATTORNEYS, PC<br>gslaughter@sommerbarnard.com |
| John R. Humphrey<br>SOMMER BARNARD ATTORNEYS, PC<br>jhumphrey@sommerbarnard.com | Christopher M.R. Turner<br>KIRKLAND & ELLIS LLP<br>cmturner@kirkland.com |
| Richard A. Kempf<br>SOMMER BARNARD ATTORNEYS, PC<br>rkempf@sommerbarnard.com | |